**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:26-cv-27698**

SAFEWORLD INTERNATIONAL, INC.,

Plaintiff,

v.

IHAVEYOU666,

Defendant.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, SAFEWORLD INTERNATIONAL, INC. ("SafeWorld" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant iHaveYou666 ("Defendant"), who is promoting, selling, offering for sale and distributing goods infringing Plaintiff's patents within this district through various Internet based e-commerce stores, and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff SafeWorld brings this action for willful patent infringement under 35 U.S.C. § 271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented inventions within the United States, or to import them into the United States, during the term of the patents-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, and 285.

## SUBJECT MATTER JURISDICTION

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 35 U.S.C. § 271.

## PERSONAL JURISDICTION

3. Defendant is subject to personal jurisdiction in this district because it purposefully directs its activities toward and conducts business with consumers throughout the United States, including within the state of Florida and this district, through at least the internet-based e-commerce stores accessible in Florida and operating under its Seller ID.

4. Defendant is subject to personal jurisdiction in this district because its illegal activities directed towards the state of Florida cause Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities.

5. Alternatively, Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendant is not subject to jurisdiction in any state’s court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court’s personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because Defendant resides in this district or has committed acts of infringement in this district and has a regular established place of business in this district.

## THE PLAINTIFF

8. SafeWorld International, Inc. is a privately held company located in Talent, Oregon.

9. SafeWorld International, Inc., founded in the 1980s, began its involvement with the development and marketing of the original CANGUN, an evolutionary pistol-grip spray can

tool that easily snaps on to standard aerosol spray cans - transforming them into professional-style spray guns with unprecedented control, for hours of effortless, pain-free spraying (the "CANGUN products"). SafeWorld manufactures its pistol-grip spray can tool from non-toxic, rugged, environmentally preferred, recycled #5 polypropylene. Since production of the original CANGUN began in 1982 in the United States, followed by the development of its enhanced version, CANGUN1, SafeWorld has used over 7 tons of recycled plastic. Plaintiff has been selling the CANGUN products for over 40 years.

10. The CANGUN products are sold legitimately through Amazon, Harbor Freight Tools, ACE Hardware, Lee Valley, and other authorized retailers.

11. Plaintiff owns its website at URL https://cangun.com/.

12. Plaintiff is the owner of all rights in and to the patents described below that are the subject of this action.

13. Plaintiff offers for sale and sells its products within the State of Florida, including this district, and throughout the United States.

14. Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers such as the Defendant.

15. Plaintiff is harmed, the consuming public is duped and confused, and the Defendant earns substantial profits in connection with the infringing conduct.

16. In order to combat the harm caused by the Defendant and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

17. The explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A. PLAINTIFF'S PATENT RIGHTS

18. Plaintiff owns all right, title, and interest in, and has standing to sue for infringement of U.S. Patents No. 8,272,542 entitled “SPRAY CAN HANDLE ATTACHMENT,” issued on September 25, 2012 (the “’542 Patent”), and No. 8,714,416 entitled “SPRAY CAN HANDLE ATTACHMENT AND METHOD OF USING,” issued on May 6, 2014 (the “’416 Patent”). The ’416 Patent is a continuation-in-part of the ’542 Patent. True and correct copies of the ’542 Patent and the ’416 Patent (collectively the “Patents-In-Suit”) are attached hereto as **Composite Exhibit 1**.

19. The Patents-In-Suit generally relate to handle attachments for aerosol spray cans that provide a secure grip while allowing a user to actuate the can’s push-type dispenser valve, as well as a method of using the same. The attachments include a housing defining a grip and a cap configured to couple to the exterior of the spray can’s valve mounting cup. The cap incorporates a C-shaped rim having a central opening, a circumferential gap, and one or more strategically positioned slots in a radially extending flange, which facilitate an interference fit with the valve mounting cup and secure the attachment during use. The patented technology further includes an actuation mechanism for operating the dispenser valve and, in certain embodiments, structures that increase the rigidity and gripping force of the rim to enable the attachment to securely lift and operate heavier aerosol spray cans.

20. The Patents-In-Suit are valid, and the maintenance fees are current.

21. Only the Plaintiff has authorization to import, make, use or sell goods using the Patents-In-Suit.

22. At all times relevant, Plaintiff complied with the federal patent marking statute, 35 U.S.C. § 287(a), as can be seen in a photograph of Plaintiff's product in **Exhibit 2** attached hereto.

## DEFENDANT

23. **Exhibit 3** attached hereto contains a true and accurate screenshot of the Defendant's seller information showing how the Defendant identifies itself on the marketplace platform where Defendant promotes, advertises, and sells the accused product(s).

24. The seller information includes the Seller Name and/or Seller ID. The Seller ID is a unique multi-character code assigned to the Defendant by the marketplace where the Defendant sells the accused product(s). The Seller Name is an alphanumeric designator chosen by the Defendant. The Seller Name can be changed by the Defendant at will, but the Seller ID will remain the same.

25. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

26. Defendant is an individual and/or business entity of unknown makeup, who, upon information and belief, either resides and/or operates in foreign jurisdictions, redistributes products from the same or similar sources in those locations, and/or ships goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute products from those locations.

27. Defendant is engaged in business in Florida but has not appointed an agent for service of process.

28. Upon information and belief, Defendant has registered, established or purchased, and maintained its Seller ID.

29. Defendant targets its business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller ID.

30. Defendant is the past and present controlling forces behind the sale of products that infringe Plaintiff's patents rights as described herein operating and using at least the Seller ID.

31. Defendant directly engages in unfair competition with Plaintiff by promoting, manufacturing, selling, offering for sale and distributing goods that infringe Plaintiff's patents to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller ID and additional names, websites, or seller identification aliases not yet known to Plaintiff.

32. Defendant has purposefully directed some portion of its illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of infringing goods into the State.

33. Upon information and belief, Defendant may have engaged in fraudulent conduct with respect to the registration of the Seller ID by providing false and/or misleading information to the Internet based e-commerce platform where it offers to sell and/or sells during the registration or maintenance process related to the respective Seller ID.

34. Upon information and belief, Defendant registered and maintained its Seller ID for the sole purpose of engaging in illegal counterfeiting and infringing activities.

35. Upon information and belief, Defendant will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale infringements of Plaintiff's patents unless preliminarily and permanently enjoined.

36. Defendant uses its Internet-based business to infringe the intellectual property rights of Plaintiff and others.

37. Defendant's business names, i.e., the Seller ID, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of products that infringe the Patents-In-Suit are essential components of Defendant's online activities and are one of the means by which Defendant furthers its counterfeiting and infringement scheme and cause harm to Plaintiff.

38. The appearance of Defendant's individual seller store in search engine results undermines Plaintiff's efforts to educate consumers about the value of genuine products sold that practice the Patents-In-Suit.

39. Defendant is using infringements of the Patents-In-Suit to drive Internet consumer traffic to its e-commerce store operating under the Seller ID, thereby increasing the value of the Seller ID and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

40. Defendant, through the sale and offer to sell infringing products, is directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

41. The natural and intended by product of Defendant's actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

42. Upon information and belief, at all times relevant hereto, Defendant had actual or constructive knowledge of Plaintiff's Patents-In-Suit, including Plaintiff's exclusive right to use and license its patents.

**DEFENDANT'S INFRINGING ACTIVITIES**

43. Defendant is promoting, advertising, manufacturing, distributing, selling, and/or offering for sale products that have substantially the same technical features as the Patents-In-Suit, infringing Plaintiff's patent rights (the "Infringing Goods") through at least the Internet based e-commerce store operating under the Seller ID.

44. Defendant's Infringing Goods practice all elements of claim 1 of the '542 Patent. Attached as **Exhibit 4** is a claim chart that compares Defendant's Infringing Goods to claim 1 of the '542 Patent and shows how the Infringing Goods practice all elements of claim 1 of the '542 Patent.

45. For additional reference, shown below side by side, is a comparison of Plaintiff's genuine product and Defendant's infringing product.

**Plaintiff's genuine product:**




**Defendant's infringing product:**



46. Plaintiff has used the Patents-In-Suit extensively and continuously before Defendant began offering infringing products that have substantially the same technical features as the Patents-In-Suit.

47. Upon information and belief, Defendant's Infringing Goods are of a quality substantially different than that of Plaintiff's genuine goods with the Patents-In-Suit.

48. Defendant, upon information and belief, is actively using, promoting and otherwise advertising, distributing, manufacturing, selling and/or offering for sale substantial quantities of its Infringing Goods without authority to use the Patents-In-Suit.

49. Defendant advertises its e-commerce store, including its Infringing Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller ID.

50. In so advertising its store and products, Defendant improperly and unlawfully uses the Patents-In-Suit without Plaintiff's permission.

51. As part of its overall infringement and counterfeiting scheme, Defendant is, upon information and belief, concurrently employing and benefitting from substantially similar advertising and marketing strategies based in large measure upon an illegal use of the Patents-In-Suit.

52. By its actions, Defendant is contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

53. Defendant is causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine

goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's business and its intellectual property assets, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

54. Defendant is concurrently conducting and targeting its infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

55. As a result, Defendant is defrauding Plaintiff and the consuming public for Defendant's own benefit.

56. Upon information and belief, at all times relevant hereto, Defendant in this action had full knowledge of Plaintiff's ownership of the Patents-In-Suit, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

57. Defendant's use of the Patents-In-Suit, including the promotion and advertisement, manufacturing, distribution, sale and offering for sale of its Infringing Goods, is without Plaintiff's consent or authorization.

58. Defendant is engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's patent rights for the purpose of trading on Plaintiff's goodwill and reputation.

59. If Defendant's intentional infringing and counterfeiting activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

60. Defendant's infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

61. Defendant's payment and financial accounts are being used by Defendant to accept, receive, and deposit profits from Defendant's infringing activities connected to its Seller ID and any other alias, e-commerce store, or seller identification name being used and/or controlled by Defendant.

62. Defendant is likely to transfer or secret its assets to avoid payment of any monetary judgment awarded to Plaintiff.

63. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendant's unauthorized and infringing activities and its wrongful use of Plaintiff's patent rights.

64. If Defendant's infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

65. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful use, advertisement, promotion, manufacturing, distribution, offers to sell, and sale of its Infringing Goods using the Patents-In-Suit.

66. Defendant has sold its infringing products in competition directly with Plaintiff's genuine products.

67. Plaintiff should not have any competition from Defendant because Plaintiff never authorized Defendant to use the Patents-In-Suit.

68. Plaintiff has no adequate remedy at law.

69. Defendant's infringing activities are likely to cause and, are actually causing, confusion, mistake and deception among members of the trade and the general consuming public

as to the origin and quality of Defendant's Infringing Goods, which use the Patents-In-Suit without authorization.

70. Plaintiff has no adequate remedy at law and is suffering damages and irreparable harm.

## COUNT I – PATENT INFRINGEMENT

71. Plaintiff incorporates the allegations of paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. Plaintiff owns all right, title, and interests in U.S. Patents No. 8,272,542 and No. 8,714,416 claiming the technical and functional features, and related method of its CANGUN pistol-grip spray can tool.

73. Within the six years preceding the filing of this Complaint, Defendant has been making, using, selling, importing and/or offering to sell products that infringe, directly or indirectly, the Patents-In-Suit both literally and under the doctrine of equivalents.

74. Defendant has infringed the Patents-In-Suit and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the patented inventions as well as the loss of sales stemming from the infringing acts.

75. Defendant will derive a competitive advantage from using Plaintiff's patented technology without paying compensation for such use.

76. Defendant's infringement, contributory infringement and/or inducement to infringe has injured Plaintiff, and Plaintiff is, therefore, entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

77. Defendant's infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendant had notice of or knew of the Patents-In-Suit and has nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the Patents-In-Suit.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

A. Entry of temporary, preliminary, and permanent injunctions pursuant to 35 U.S.C. §§ 271 and 283 and Federal Rule of Civil Procedure 65, enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing, causing to be manufactured, importing, advertising, promoting, distributing, selling, offering for sale, or otherwise making, using, or commercializing any products that infringe the Patents-In-Suit, including any products that practice one or more claims of the asserted patents; and from otherwise infringing, directly or indirectly, the Patents-In-Suit.

B. Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendant and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendant in connection with the sale and distribution of infringing goods using the Patents-In-Suit.

C. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller ID's who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller ID's and any other alias seller identification names being used and/or controlled by Defendant to engage in the business of marketing, distribution, offering to sell, and/or selling infringing goods using the Patents-In-Suit.

D. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller ID's who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendant's respective Seller ID's.

E. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform any and all listings and associated images of infringing goods using the Patents-In-Suit via the e-commerce stores operating under the Seller ID's, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN"), and upon Plaintiff's request, any other listings and

images of goods bearing counterfeits and/or infringements of the Patents-In-Suit associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendant to promote, offer for sale and/or sell infringing goods using the Patents-In-Suit.

F. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court’s inherent authority that, upon Plaintiff's request, Defendant and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of the Defendant using the Patents-In-Suit in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

G. Entry of an Order requiring Defendant to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of its products, including without limitation, the placement of corrective advertising and providing written notice to the public.

H. Entry of an Order requiring Defendant to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. § 284 which shall in no event be less than a reasonable royalty.

I. Entry of an award pursuant to 35 U.S.C. § 285 of Plaintiff’s reasonable attorney’s fees.

J. Entry of an Order that, upon Plaintiff's request, Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or

sub-accounts used in connection with the Seller ID, or other alias seller identification or e-commerce store names used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

K. Entry of an award of pre-judgment interest on the judgment amount.

L. Entry of an Order for any further relief as the Court may deem just and proper.

Dated: October 29, 2026

Respectfully submitted,

*<u>/s/ Angela M. Nieves</u>*
ANGELA M. NIEVES
Florida Bar Number: 1032760
angela.nieves@sriplaw.com
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 212
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff SafeWorld International, Inc.*